UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROD PATROS ROMAYA,

Petitioner,                          Case No. 16-cv-14118

v.                                   U.S. District Court Judge
                                     Gershwin A. Drain

DUNCAN MACLAREN,

Respondent.

_____/

## OPINION AND ORDER DENYING THE AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 12), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

### I.   INTRODUCTION

Rod Patros Romaya, ("Petitioner"), confined at the Kinross Correctional Facility in Kincheloe, Michigan, filed a petition for writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254.  *See* ECF No. 12.  He challenges his conviction for two counts of first-degree criminal sexual conduct, in violation of Mich. Comp. Laws § 750.520b, three counts of second-degree criminal sexual conduct, in violation of Mich. Comp. Laws § 750.520c, and being a second felony habitual

1

offender, in violation of Mich. Comp. Laws § 769.10. For the following reasons, the

Amended Petition for Writ of Habeas Corpus (ECF No. 12) is **DENIED**.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Petitioner was convicted following a jury trial in the Macomb County Circuit

Court. This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review. 28 U.S.C. §

2254(e)(1); *see also Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant was convicted of sexually abusing his biological daughter,
> MR. In January 2009, when MR was 10 years old, defendant moved
> her to the United States from Iraq, where she had been living with her
> mother. MR had met defendant before[] but had never lived with him
> before coming to the United States. MR testified that after she moved
> in with defendant, he touched her breasts underneath her clothes on
> several occasions. Defendant's behavior eventually escalated to
> forcing MR to touch his penis and put his penis in her mouth. On one
> of those occasions, MR used her T-shirt to clean herself after defendant
> ejaculated on her, and she saved the shirt in a plastic bag. That shirt
> was turned over to the police. Forensic testing revealed the presence of
> seminal fluid on MR's shirt, and the pattern of the stain was consistent
> with a wiping motion. The defense stipulated that defendant's DNA
> was on the shirt. Defendant left the country after Child Protective
> Services (CPS) began an investigation, and he was apprehended several
> months later in Sweden. The defense theory at trial was that defendant
> did not do anything inappropriate, and that the prosecution witnesses
> were not credible.

2

*People v. Romaya*, No. 319388, 2015 WL 1739970, at * 1 (Mich. Ct. App. Apr. 16, 2015); ECF No. 15-28, PageID.1108.  The Michigan Court of Appeals affirmed the conviction and sentence. *Id.*

Petitioner filed an application for leave to appeal to the Michigan Supreme Court.  ECF No. 15-28, PageID.1074.  In lieu of granting leave to appeal, the Michigan Supreme Court remanded the case to the trial court for the judge to determine whether he would have imposed a "materially different sentence under the sentencing procedure described in *People v. Lockridge*, 498 Mich. 358 (2015)." *People v. Romaya*, 498 Mich. 903, 870 N.W.2d 572 (2015); ECF No. 15-28, PageID.1069.  In all other respects, the Michigan Supreme Court denied leave to appeal. *Id*.

On remand, the trial court judge declined to resentence Petitioner. *People v. Romaya,* No. 12-4019-FC (Macomb Cty. Cir. Ct., Dec. 14, 2015); ECF No. 15-29, PageID.1252.  Petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied. *People v. Romaya,* No. 332781 (Mich. Ct. App. Sept. 7, 2016); ECF No. 15-29, PageID.1236.  Petitioner did not appeal this decision to the Michigan Supreme Court.  ECF No. 30, PageID.1307.

Petitioner initiated the instant habeas proceeding, raising the following grounds for relief:

3

I. Mr. Romaya is entitled to a new trial for a violation of his right to self-representation.

. . .

II. Mr. Romaya is entitled to a new trial for a violation of his right to counsel when there was a breakdown [in the relationship] with his appointed counsel and the trial court would not appoint him substitute counsel.

. . .

III. Mr. Romaya was denied his right to a fair trial by the admission of evidence that he went to another country and was arrested from the airport before he was even charged.

. . .

IV. Mr. Romaya's Sixth and Fourteenth Amendment rights were violated by judicial fact finding that increased the floor of the permissible sentence in violation of *Alleyne v. United States*.

. . .

V. The Defendant–Appellant's right to a fair trial was violated by the audible and visible shackling of the Defendant–Appellant before the jurors with no record justification, [in violation of] U.S. Const. Amends 5 and 14.

. . .

VI. The Defendant–Appellant was denied the effective assistance of counsel and the right to testify in his own defense by fraud on the court and extortion by a court officer, [in violation of] U.S. Const. Amends. 5, 6, and 14.

. . .

VII. The Defendant–Appellant[']s right to the effective assistance of counsel was violated by inadequate investigations, inadequate pre-trial preparations, failure to present a substantive defense, and inadequate cross-examination, [in violation of] Mich. Const., Art 1, §§ 14, 17, and 20; U.S. Const., Amends 6 and 14.

4

ECF No. 12, PageID.70-72; *see also* ECF No. 1. The petition was held in abeyance so that he could return to the state court to exhaust additional claims. ECF No. 9.

Petitioner returned to state court and filed a post-conviction motion for relief from judgment, which was denied. *People v. Romaya,* No. 12-4019-FC (Macomb Cty. Cir. Ct., June 20, 2017); ECF No. 15-31, PageID.1332-33. Specifically, the trial court found that Petitioner had not "provide[d] any specific reason or basis for his request" such as "a specific reference to any newly discovered evidence" or "how any additional evidence would be exculpatory." *Id.* at PageID.1332. The Michigan Court of Appeals and Supreme Court denied Petitioner leave to appeal. *People v. Romaya,* No. 339476 (Mich. Ct. App. Jan. 25, 2018), *lv den.* 503 Mich. 858, 917 N.W.2d 390 (2018).

This Court subsequently reopened the case and directed the Clerk of the Court to file petitioner's amended habeas petition. ECF No. 13. In his Amended Petition for Writ of Habeas Corpus (ECF No. 12), Petitioner seeks habeas relief on the grounds list above as well as the following, which he seems to have labeled in error:[1]

> I. The trial court abused its discretion for failure to settle Defendant-Appellant's unexhausted state court claims depriving Defendant-Appellant of his Fourth, Sixth, Eighth, and Fourteenth State and Federal Constitutional Rights.

---

[1] Hereinafter, the Court will refer to this as Claim VIII for ease of reference.

> A.  The trial court's failure to follow and appellate court's ruling on remand.

*Id.* at PageID.70.

## III.   LAW & ANALYSIS

### A. Standard of Review

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when the state court's

6

application of clearly established federal law was "objectively unreasonable." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly[;]" the application "must also be unreasonable." *Id.* at 411; *see also White v. Woodall*, 572 U.S. 415, 419 (2014).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 578 U.S. 113, 118 (2016).

7

## B. Discussion

### 1. Claim I: Denial of self-representation

Petitioner first claims he was denied the right to represent himself at trial.

ECF No. 12, PageID.70.

The Michigan Court of Appeals rejected this claim:

In this case, the record discloses that defendant did not unequivocally express a desire to waive his right to counsel and to represent himself. He instead sought an adjournment to hire new counsel. Specifically, on the day trial was scheduled to begin, defendant appeared in court with his second court-appointed attorney, complained that there had been a breakdown in the attorney-client relationship, and requested an adjournment to hire a new attorney. The trial court agreed to release defendant's attorney and adjourn trial[] but cautioned defendant that if he did not retain an attorney by the next scheduled trial date, trial would not be adjourned and he would have to represent himself. Defendant promised that he would "hire a lawyer, hundred percent." Despite defendant's assurance, the trial court attempted to follow the procedural requirements in *Anderson* [2] and MCR 6.005(D). The trial court began by informing defendant of the charges and possible penalties, at which point defendant repeatedly interrupted to proclaim his innocence. At that point, without completing a full colloquy under *Anderson* and MCR 6.005(D), the trial court concluded that defendant "could not represent himself, he just couldn't." Defendant did not disagree[] and continued to express that he wanted an attorney to represent him. At no time did defendant make a request, let alone an unequivocal request, to represent himself.

---

[2] *People v. Anderson*, 398 Mich. 361, 367; 247 NW2d 857 (1976).

From the record, it is clear that the option of defendant representing himself was raised by the trial court, not defendant, as an alternative method of avoiding another adjournment if defendant failed to hire an attorney.  Acceding to defendant's expressed desire for a new attorney, the trial court arranged for the appointment of a third attorney, in case defendant did not hire an attorney, and scheduled a new trial date that allowed sufficient time for the new attorney, whether retained or appointed, to prepare for trial. Defendant proceeded with his third court-appointed attorney at all subsequent hearings, trial, and sentencing.  Because defendant never made an unequivocal request that he be allowed to represent himself, the trial court was not required to conduct a full colloquy under *Anderson* and MCR 6.005(D), and there is no merit to defendant's argument that his right of self-representation was violated.

*Romaya*, 2015 WL 1739970, at * 2 (footnote omitted); ECF No. 15-28, PageID.1109-10.

In a footnote, the Michigan Court of Appeals rejected any claim by petitioner that he requested to represent himself at the preliminary examination:

Defendant suggests on appeal that, although he did not make a specific request to represent himself on the first day of trial, he did make such a request at a preliminary examination.  Reviewing the preliminary examination transcript, we conclude that defendant also failed to make an unequivocal request to represent himself at that time.  At the preliminary examination, defendant's attorney stated that defendant "has a right to represent himself, if he wants to represent himself. . . ." Based on this passing remark by defendant's attorney, the district court briefly considered whether defendant could represent himself and concluded that, "if" there was a motion for defendant to represent himself, it was denied because defendant's remarks were not always lucid[,] and he did not have a sufficient grasp of the legalities involved. However, while defendant's attorney and the district court discussed

9

the possibility of self-representation, defendant never made such a request on the record.  Defendant requested dismissal of his attorney, but he also asserted that "I need attorney, attorney defending me, listening to me what I'm saying to him. . . ."  Fairly read, defendant may have been unhappy with his counsel at the time of the preliminary examination, and he may have requested new counsel, but he did not make an unequivocal request to represent himself.

*Romaya*, 2015 WL 1739970, at * 2 n.1 (first and third alteration in original); ECF No. 15-28, PageID.1110.

Criminal defendants have a constitutional right to conduct their own defense at trial if they voluntarily and intelligently elect to do so.  *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975).  However, the right to self-representation is not absolute.   *Martinez*, 528 U.S. at 161.   A defendant's request for self-representation must be made clearly and unequivocally. *See Faretta*, 422 U.S. at 835; *see also U.S. v. Martin,* 25 F. 3d 293, 295 (6th Cir. 1994) ("To assert the right of self-representation, a defendant must do so unequivocally.").   Furthermore, a defendant's invocation of his right of self-representation must be timely made.  *See e.g.*, *Moore v. Haviland,* 531 F. 3d 393, 403 (6th Cir. 2008).

Petitioner is not entitled to relief on his claim because the Michigan Court of Appeals did not err in its application of Federal law.  Petitioner did not clearly and unequivocally ask to represent himself.   He merely expressed some dissatisfaction

10

with his counsel at the preliminary examination and on the eve of trial.  A court should not interpret a defendant's simple expression of dissatisfaction with his or her trial counsel's performance as a motion by the defendant to proceed *pro se.  See Martin*, 25 F.3d at 296.

Petitioner's claim is also defeated by the fact that after discussing the matter with the trial judge, he allowed substitute counsel to represent him at his trial and sentencing without making any subsequent demands to represent himself.  "Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984).  Because Petitioner never again asserted his right to self-representation, the Court must presume that the Petitioner agreed to continue to counsel's representation of him at trial and at sentencing.  The Michigan Court of Appeals did not unreasonably apply Federal law or reach an unreasonable decision in light of the facts.  Thus, Petitioner is not entitled to relief on his first claim.

### 2.  Claim II: Denial of substitution of counsel

Petitioner next argues that the trial court erred in denying the request for new counsel that he made on the first day of trial.  ECF No. 12, PageID.70

11

The Michigan Court of Appeals also rejected this claim:

In this case, initially, we reject defendant's claim that the trial court did not adequately inquire into the breakdown in the attorney-client relationship.  The trial court gave defendant an opportunity to place his complaints about counsel's alleged inadequacies on the record[] and allowed defense counsel to respond.  The trial court also invited defendant to submit in writing any further grievances against defense counsel.  In short, the trial court gave defendant ample opportunity to voice his claims[,] and the trial court was clearly aware of defendant's complaints regarding appointed counsel.

Further, defendant's complaints did not establish good cause for the appointment of new counsel. Defendant stated that he was dissatisfied with defense counsel's preparedness because counsel did not subpoena defense witnesses that he recommended, and they had little communication before trial.  However, the record does not disclose, nor did defense counsel ever indicate, that he was unprepared or needed more time.  To the contrary, counsel appeared to be fully aware of the facts of the case, which were not overly complex, and counsel advised the court that he was ready to proceed.  Even if defense counsel did not communicate with defendant as much as defendant would have preferred, defendant admitted that defense counsel visited him in jail on two occasions.  Defense counsel claimed that he visited defendant "several times at the jail," and defendant acknowledged communicating with counsel by virtue of his ongoing complaint that defense counsel was not following his instructions.  Nothing in counsel's performance suggests that he was "inadequate, lacking in diligence, or disinterested" in defendant's case, and thus, counsel's alleged failures did not establish good cause for substitution of counsel.

Defendant also expressed his dissatisfaction that defense counsel did not contact and subpoena the witnesses he recommended.  Both of

12

defendant's first two appointed attorneys made efforts to contact defendant's witnesses.  After appointing defense counsel as defendant's third attorney, the trial court granted counsel's request for an investigator "to help locate" "several" potential defense witnesses.  On the first day of trial, counsel advised the court that he had worked with the investigator and that "his efforts did not lead [ ]to any witnesses that . . . might be produced[.]"  Defendant admitted that defense counsel advised him that his witnesses were "no good."  Defense counsel also explained that he had "an active trial strategy," that defendant sought the presentation of evidence that was "not supportable," and that "some of" defendant's proposed "attacks against the complainant are just not admissible."  Counsel was not required to "advocate a meritless position."  Moreover, counsel's decisions about defense strategy, including what evidence and witnesses to present, are matters of trial strategy, and disagreements regarding matters of trial strategy or professional judgment do not warrant appointment of substitute counsel.

Furthermore, defendant waited until the day of trial to request new counsel.  The jury and witnesses were present, and the prosecutor and defense counsel were ready to proceed.  Defendant had previously requested new counsel on the prior trial date, and the court granted an adjournment.  A substitution of counsel on the adjourned trial date, when both the prosecutor and defense counsel were ready to proceed, would have unreasonably delayed the judicial process.  Consequently, the trial court did not abuse its discretion by denying defendant's request for a new attorney.

*Romaya*, 2015 WL 1739970, at * 3-4 (third, fourth, and fifth alterations in original)

(internal citations omitted); ECF No. 15-28, PageID.1111-12.

13

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993) (citing *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). Stated another way, "[a]t the same time that the Sixth Amendment guarantees defendants in criminal cases the right to adequate representation, it does not give impecunious defendants a Sixth Amendment right to choose their counsel." *United States v. Pittman*, 816 F.3d 419, 425 (6th Cir. 2016) (cleaned up). Indeed, a trial court retains "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Abby v. Howe*, 742 F.3d 221, 227 (6th Cir. 2014) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006)).

In reviewing a motion for substitution of counsel, a court should generally consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.* at 663-64. Although federal appellate courts agree that a court

14

"cannot properly resolve substitution motions without probing why a defendant wants a new lawyer[,]" *Martel,* 545 U.S. at 664, the Supreme Court has not adopted such a bright line rule.  In *Martel*, the Court found that the trial court had not abused its discretion for failing to query a criminal defendant about his complaints against counsel before denying his motion for substitution where the defendant had recently made and withdrawn a similar motion, the motion was untimely, and the court was ready to render a decision in that case.  *Id.* at 664-66.

Therefore, there is no clearly established federal law from the Supreme Court requiring an inquiry by the trial judge into the nature of a defendant's dissatisfaction with his or her attorney prior to denying a motion for substitution of counsel.  *See James v. Brigano*, 470 F. 3d 636, 643 (6th Cir. 2006) (reversing a grant of relief because the inquiry requirement was not "clearly established Federal law, as determined by the Supreme Court of the United States" (quoting 28 U.S.C. § 2254(d)(1))).  Thus, in the absence of a showing that a habeas petitioner received ineffective assistance of counsel at trial, a state trial judge's failure to inquire into a habeas petitioner's complaints against his or her counsel before denying a motion for substitution of counsel does not entitle the petitioner to habeas relief.  *See Peterson v. Smith,* 510 F. App'x. 356, 366-67 (6th Cir. 2013) (collecting cases).

15

As discussed in greater detail *infra*, Petitioner has not shown that he received ineffective assistance of counsel at trial.[3]   Accordingly, because there is no clearly established Supreme Court law to support his claim, he is not entitled to habeas relief on this basis.   *See Woods v. Donald*, 575 U.S. 312, 317 (2015) (per curiam) ("Because none of [the Supreme Court's] cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from [the Supreme] Court." (internal quotation marks omitted)).

### 3. Claim III: Admission of evidence that Petitioner left the United States

Petitioner next claims he was denied a fair trial by the admission of evidence that he traveled to Sweden before the complaint against him issued and that he was arrested and extradited back to the United States.  ECF No. 12, PageID.71.

---

[3] The Court also notes, though it is not relevant to the analysis, that Petitioner's request for substitution of counsel was untimely because it was made on the first day of trial, *see United States v. Griffin*, 476 F. App'x. 592, 596 (6th Cir. 2011), and Petitioner had already delayed the case by discharging his first and second attorneys, *see United States v. Ammons*, 419 F. App'x. 550, 552-53 (6th Cir. 2011).  And while the trial judge made a sufficient inquiry into the nature of the conflict between Petitioner and trial counsel, Petitioner also failed to establish good cause for the substitution.  See *United States v. Jennings*, 83 F.3d 145, 149 (6th Cir.), *as amended on denial of reh'g and reh'g en banc,* 96 F.3d 799 (6th Cir. 1996).

16

As a threshold matter, the Government argues Petitioner has procedurally defaulted this claim because he failed to object to the admission of the evidence at trial.  ECF No. 14, PageID.112.

> When a habeas petitioner fails to obtain consideration of a claim by a state court[] . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

*Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000).

> [P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim.

Willis v. Smith, 351 F.3d 741, 744 (6th Cir. 2003) (citation omitted).  "Procedural default can be avoided if a habeas petitioner can show that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case."  *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011) (internal quotation marks omitted).

Here, Petitioner's claim that to the admission of the evidence of flight denied him a fair trial was procedurally defaulted by his failure to make a contemporaneous objection.  In Michigan, "[u]npreserved claims of evidentiary error are reviewed for

17

plain error affecting the defendant's substantial rights." *People v. Benton*, 294 Mich. App. 191, 202, 817 N.W.2d 599, 607 (2011). The Michigan Court of Appeals enforced this procedural rule by applying plain error review to Petitioner's claim. *Romaya*, 2015 WL 1739970, at *4; ECF No. 15-28, PageID.1112. Application of plain error review "constitutes an adequate and independent state ground for foreclosing federal review." *Taylor*, 649 F.3d at 450–51. Moreover, Petitioner "has failed to demonstrate cause or prejudice to excuse his procedural default." *Id.* at 451.

Even if Petitioner's claim was not procedurally defaulted, the Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, "[e]rrors in the application of state law, especially rulings regarding the admissibility or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Seymour,* 224 F. 3d at 552 (citation omitted).

The Sixth Circuit has "typically held that to show a due-process violation under AEDPA rooted in an evidentiary ruling, there must be a Supreme Court case establishing a due-process right with regard to that specific kind of evidence."

18

*Collier v. Lafler*, 419 F. App'x. 555, 558 (6th Cir. 2011). The Sixth Circuit noted that "although the Supreme Court has questioned the probative value of 'flight' evidence," *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 483 n. 10 (1963), "it is permissible for Michigan to have evidentiary rules that allow introduction of such evidence." *Id.* Despite the Supreme Court's skepticism concerning the probative value of flight evidence, "it has recognized that such evidence may be relevant to show consciousness of guilt." *Dorchy v. Jones*, 320 F. Supp. 2d 564, 580 (E.D. Mich. 2004) (citing *United States v. Scheffer*, 523 U.S. 303, 331 (1998) (Stevens, J. dissenting)). The Michigan Court of Appeals concluded that the flight evidence in this case was admitted to show petitioner's consciousness of guilt. *Romaya*, 2015 WL 1739970, at *5. This was not contrary to, or an unreasonable application of Federal law, nor was it an unreasonable interpretation of the facts. Accordingly, petitioner is not entitled to habeas relief on his third claim. *Id.*

### 4. Claim IV: Judicial factfinding in violation of *Alleyne v. United States* and Claim VIII: resentencing on remand

Petitioner next contends that the trial court erred when scoring the sentencing guideline variables by considering factors beyond what was admitted to by Petitioner or found by a jury beyond a reasonable doubt. ECF No. 12, PageID.71.

Claim IV ignores several developments in this case. On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory

19

minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013). Relying on *Alleyne*, the Michigan Supreme Court held that Michigan's mandatory sentencing guidelines scheme violates the Sixth Amendment right to a jury trial. *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015). The Michigan Supreme Court severed and struck the mandatory component of the guidelines, making them advisory. *Id.* 498 Mich. at 391-92, 870 N.W.2 at 520-21.

On appeal, the Michigan Supreme Court concluded that Petitioner's case should be remanded to the trial court to determine whether it would have imposed a different sentence without the sentencing guidelines. *People v. Romaya*, 498 Mich. 903, 870 N.W.2d 572 (2015); ECF No. 15-28, PageID.1069. On remand, the trial court declined to re-sentence Petitioner using a form order. ECF No. 15-29, PageID.1252. This Court construes that order as a finding by the trial court that it would have imposed the same sentence even without the guidelines. Claim IV is therefore moot. *See Hill v. Sheets,* 409 F. App'x. 821, 824-25 (6th Cir. 2010) (finding that state resentencing petitioner mooted his habeas petition because he challenged only his sentence and not the conviction itself).

Petitioner is not entitled to habeas relief on Claim VIII. In *Reign v. Gidley,* 929 F. 3d 777, 780 (6th Cir. 2019), the Sixth Circuit held that it was not contrary to,

20

or an unreasonable application of, clearly established Federal law for a state court to determine it would have imposed the same sentence post-*Lockridge* without conducting a hearing.  In so doing, the Sixth Circuit emphasized that the United States Supreme Court has yet to clearly establish what type of remedy is appropriate for cases in which a mandatory sentencing guidelines regime was invalidated and made advisory. *Id.,* at 781-82.  The Supreme Court has not yet spoken on the issue, so Petitioner is not entitled to relief on Claim VIII.  *Woods*, 575 U.S. at 317.0

### 5.  Claim V: Shackling in the presence of the jury

Petitioner next claims he was denied his right to a fair trial because he was notably shackled in the jury's presence.  ECF No. 12, PageID.72.

Like Claim III above, the Government argues this claim is procedurally defaulted because he failed to object to the shackles at trial.  ECF No. 14, PageID.117.  The Court agrees that Petitioner has satisfied all the elements of procedural default: he failed to object to the shackling at trial, the Michigan Court of Appeals reviewed his claim for plain error review, and such a review constitutes an adequate and independent state ground for foreclosing federal review.  *Taylor*, 649 F.3d at 450 ("[Petitioner's] claim in regard to his shackling was procedurally defaulted by his failure to make a contemporaneous-objection to his treatment at the trial-court level.").  Nevertheless, the Court finds that Petitioner has shown cause

and prejudice.  Specifically, he contends that trial counsel was ineffective, among other things, because he did not object to Petitioner's shackling.  ECF No. 12, PageID.72

However, Petitioner would not be entitled to relief on Claim V even if it was not procedurally defaulted.  The Michigan Court of Appeals rejected this claim, finding "the record lacks any evidence that [Petitioner's] legs were actually shackled or, if they were, that the shackling was visible to jurors."  *Romaya*, 2015 WL 1739970, at * 6, *6 n.3.  "Thus, there is no basis for finding plain error (i.e., an error that is 'clear' or 'obvious')."  *Id.* at *6.

This is neither contrary to, nor an unreasonable application of clearly established Federal law.  In *Deck v. Missouri*, 544 U.S. 622, 629 (2005), the U.S. Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."  *Deck's* facts and holding, however, "concerned only *visible* restraints at trial."  *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008).

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence.  28 U.S.C. §

22

2254(e)(1); *see also Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001). This presumption of correctness extends to factual findings made by a state appellate court based on their review of trial court records. *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

Here, the Michigan Court of Appeals found that petitioner failed to establish that his leg restraints were visible to the jurors at his trial. This factual finding is binding on this Court unless Petitioner can show that it is clearly erroneous. *See Earhart v. Konteh,* 589 F.3d 337, 349 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)). Petitioner is not entitled to habeas relief on his claim, because he has presented no evidence to contradict this finding, let alone establish that it was clearly erroneous. *Mendoza,* 544 F. 3d at 655. Moreover, even if Petitioner's shackling presented a "close question" to the Michigan courts, this Court would not be free to hold that the Michigan Court of Appeals' rejections of his shackling claim was objectively unreasonable. *See Mendoza*, 544 F. 3d at 655. Accordingly, Petitioner is not entitled to habeas relief on his fifth claim.

### 6.  Claims VI: Denial of right to testify

In Claim VI, Petitioner alleges that his defense counsel coerced him into giving up his right to testify by agreeing to investigate the case, locate any witnesses,

and prepare a defense only if petitioner gave up his right to testify.  ECF No. 12, PageID.72.

The Michigan Court of Appeals rejected the claim:

There is no basis in the record for concluding that defense counsel deprived defendant of his constitutional right to testify.  The record indicates that after the prosecution rested, the trial court advised defendant of his right to testify or not testify, and informed him that the decision whether to testify was defendant's "and [his] alone." Defendant stated that he understood that the decision was his[] and indicated that he had discussed the matter with defense counsel. Defense counsel stated on the record that he had advised defendant not to testify, and asked defendant if he agreed.  Defendant then stated, "You told me that but I'd like to testify because I want to tell everybody how she's lying.  That's all."  When defense counsel requested an opportunity to further discuss the matter with defendant, the trial court allowed defendant's nephew to accompany them into a private room and then, at defendant's request for "time to think about it," gave defendant "overnight to discuss this with [his] attorney, [his] family member and anybody else [he] wish[ed]."  The following day, the trial court again advised defendant of his right to testify or not to testify, and again explained that the decision was his and his alone.  Defense counsel stated on the record that he and defendant had discussed whether defendant was going to testify, and that defendant agreed that he was not going to testify.  Defendant confirmed that it was his decision to not testify.  Defendant did not claim that he was ignorant of his right to testify, or that defense counsel had coerced him into not testifying.

The record reflects that defendant was properly advised that it was solely his decision whether to testify, that he was given ample opportunity to contemplate his decision and discuss it with anyone he

24

wished, and that he personally and voluntarily elected not to testify as a matter of trial strategy. Thus, the record does not support defendant's claim that he was prohibited from testifying, and defendant has not overcome the strong presumption of sound strategy regarding any advice counsel may have offered him in respect to his decision to testify.

*Romaya*, 2015 WL 1739970, at * 7–8 (all alterations but second in original) (internal citations omitted); ECF No. 15-28, PageID.1163.

Generally, to prevail on an ineffective assistance of counsel claim, Petitioner mush show that the state court's conclusion was contrary to, or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

"[W]hen a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000) (citation omitted). A federal court sitting in habeas review of a state court conviction should have "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (internal citation omitted). To overcome this presumption, a habeas petitioner must present record

25

evidence that he alerted the trial court to his desire to testify. *Id.* Because the record is void of any indication that Petitioner ultimately disagreed with counsel's advice that he should not testify, Petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel on this basis. *See Gonzales,* 233 F.3d at 357.

More importantly, Petitioner failed to show that he was prejudiced by counsel's advice concerning whether he should testify. Petitioner merely stated that he would have testified that the victim was lying, without providing any details of his proposed testimony, which is insufficient to establish prejudice based upon counsel's allegedly deficient advice concerning whether he should testify. *Hodge,* 579 F.3d at 640 (finding petitioner did not demonstrate prejudice where petitioner did not provide details about substance of his testimony and merely speculated that it would have impacted jury's view of certain witnesses' credibility and of his involvement in murders). Accordingly, Petitioner is not entitled to relief on his sixth claim.

### 7.  Claim VII: Ineffective assistance of counsel claims

Claim VII asserts that trial counsel was ineffective for several reasons. ECF No. 12, PageID.73.

26

First, Claim VII alleges that defense counsel was ineffective for failing to adequately communicate a plea offer to Petitioner.  ECF No. 12, PageID.72.

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 163 (2012).  To establish prejudice when the defendant has rejected a plea offer, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances.  *Id.* at 164.  The defendant must also show that the court would have accepted the plea offer's terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id*.

The Michigan Court of Appeals also rejected this claim:

The record also fails to support defendant's claim that he was denied the effective assistance of counsel because a plea offer was not adequately communicated to him.  At a pretrial hearing on February 5, 2013, the prosecutor placed the first plea offer on the record, which involved defendant pleading guilty to three counts of second-degree CSC [criminal sexual conduct].  The prosecutor also stated that, if a plea was not reached, it would be amending the information to add counts of first-degree CSC.  At that time, defendant's first attorney asked for time to discuss it with defendant.  When court reconvened on February 12, the defense attorney stated that defendant refused to discuss the plea and wanted a new lawyer.  By the pretrial hearing on February 27, defendant had new counsel and the prosecutor placed a

27

second plea offer on the record, again involving defendant's guilty plea to three counts of second-degree CSC in exchange for which the prosecutor would not amend the information to add first-degree CSC. Defendant's second attorney stated that he had discussed the plea offer with defendant, and that defendant "was not interested in the plea." In response to the trial court's questions, defendant confirmed that he had heard the plea offer and that it was his decision to reject it. At a subsequent hearing on July 23, defendant's second attorney advised the trial court that defendant was dissatisfied with his services and, among other complaints, believed that his attorney had not adequately explained the second plea offer to him.

In response, the trial court stated:

> The plea negotiation in this matter before the remand to District Court was clearly explained to you and was made part of the court record. You were absolutely aware of the ramifications of you going forward to an examination and the amendment from the prosecution to criminal sexual conduct in the first degree. [Defendant], it was on this record in front of me right here.

The record of later proceedings also discloses that defendant continued to express that he had no interest in negotiating or accepting a plea offer. For example, on the first day of trial, defense counsel (defendant's third attorney) stated for the record that he tried to "persuade" defendant to plead, but that defendant "is adamantly proclaiming his innocence" and "in the event that [defendant] is convicted, [the defense attorney] want[ed] it known that [he] did discuss with [defendant] a possible sentence agreement." On the record presented, it is abundantly clear that defense counsel conveyed plea offers to defendant and that those offers were rejected because defendant believed in his innocence; thus, defendant has failed to

28

> establish that he was denied the effective assistance of his counsel on
> this ground.

*Romaya*, 2015 WL 1739970, at * 8 (all alterations but first in original) (internal

citations and footnote omitted); ECF No. 15-28, PageID.1163-64.

This determination was neither contrary to, nor an unreasonable application

of, clearly established Federal law.   The record establishes that all three of

petitioner's lawyers communicated the plea bargain offer to petitioner and

adequately explained it to him.   Defendant cannot show deficient performance by

counsel.   Nor can he "show that but for the ineffective advice of counsel there is a

reasonable probability that the plea offer would have been presented to the court

(i.e., that the defendant would have accepted the plea and the prosecution would not

have withdrawn it in light of intervening circumstances)[.]"   *Lafler*, 566 U.S. at 164,

(2012).   Indeed, Petitioner maintained his innocence throughout the trial.   Because

there is no indication that petitioner would have been willing to make out a factual

basis of guilt, Petitioner fails to show that the plea would have been accepted and

thus fails to show that he was prejudiced by counsel's alleged deficiencies with

respect to the alleged plea offer.   *See e.g.*, *Humphress v. United States*, 398 F.3d 855,

859 (6th Cir. 2005) ("[Petitioner's] assertions of his innocence at trial and during the

magistrate's evidentiary hearing lend additional support to the district court's

conclusion that [he] would not have pled guilty."); *Jackson v. United States*, 101 F.

App'x. 583, 586 (6th Cir. 2004) (holding petitioner failed to establish prejudice where after the trial, defendant's attorney suggested that he accept responsibility for a small amount of cocaine to potentially could receive a lesser sentence, but the defendant steadfastly refused to admit his guilt).

Petitioner next contends that counsel was ineffective for failing to present evidence that his former wife, who was not the victim's mother, sent text messages threatening to file false sexual assault charges against Petitioner if he did not turn over certain property to her.  ECF No. 12, PageID.73.

The Michigan Court of Appeals rejected this claim:

Defendant has not presented us with these purported messages, nor has he explained how this evidence would have added anything of value to his defense in this case.  There is no record evidence that defendant's former wife had any direct involvement in this case.  Defendant has not overcome the presumption that counsel exercised reasonable strategy by not presenting a seemingly unconnected extortion attempt by his former wife, or shown a reasonable probability that the result of the trial would have been different had he done so.

*People v. Romaya*, 2015 WL 1739970, at * 10; ECF No. 15-28, PageID.1118.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief.  *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998) (finding counsel was not ineffective because petitioner's allegation was "merely conclusory").  "By failing to submit evidence,

30

[Petitioner] barred himself from developing the claim further, and is not now entitled to an evidentiary hearing." *Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)).   Petitioner is not entitled to relief on this claim because it is conclusory and unsupported. *See Workman,* 178 F.3d at 771.

Finally, Petitioner claims that counsel was ineffective for failing to adequately cross examine the victim, MR.  ECF No. 12, PageID.72.

The Michigan Court of Appeals rejected this claim:

In his last complaint, defendant provides a litany of questions that he contends defense counsel should have asked MR in order to impeach her credibility.  Decisions regarding how to question witnesses are presumed to be matters of trial strategy, and the record does not show that defense counsel's proffered defense or impeachment efforts were objectively unreasonable or prejudicial.  Although defense counsel did not ask every particular question now proposed by defendant, defense counsel cross-examined MR at length about her testimony and was successful in revealing some inconsistencies in her recount of what occurred.  Further, to the extent defendant and counsel more generally disagreed over the appropriate defense to pursue, in the lower court record, counsel explained that an investigator "failed to find evidence supporting [defendant's] proposed defense and the rules of evidence prevented [counsel] from presenting the defense that [defendant] wished."  Overall, having reviewed the record, we see nothing objectively unreasonable or prejudicial in counsel's performance.  The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel.

31

*Romaya*, 2015 WL 1739970, at * 10 (alterations in original) (internal citations and quotation marks omitted); ECF No. 15-28, PageID.1165-66.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id*; *see also Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002), *aff'd,* 376 F.3d 520 (6th Cir. 2004)*.*

Here, defense counsel extensively cross-examined the victim. ECF No. 15-21, PageID.551-67. The victim admitted that Petitioner had women visitors stay at the house, which suggested that he had an active sex life with adult women and thus had no need or desire to sexually abuse his minor daughter. *Id.* at PageID.553. Counsel confronted the victim with a written statement that she had made to a female detective, in which she denied that petitioner had placed his penis in her mouth, thus rebutting the first-degree criminal sexual conduct charges. *Id.* at PageID.559-61. Counsel elicited testimony from the victim that she had been born in Iraq but had been forced to come live with petitioner in the United States when she was eleven years old. *Id.* at PageID.562-65. Counsel got the victim to admit that she would prefer to return to Iraq and that she hated Petitioner. *Id.* Counsel questioned the

32

victim about whether she was bringing these sexual allegations to enable her to return to Iraq.  *Id*.  Counsel also got the victim to admit that she spoke with a male detective and denied that any acts of sexual penetration took place.  *Id.* at PageID.566-67.  Counsel later questioned the victim's teacher, Rawaa Yaldo, whom the victim confided in.  He was able to get Ms. Yaldo to admit that the victim never told her that she had been sexually abused by her father.  ECF No. 15-22, PageID.593.

Thus, defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the victim and his closing argument emphasized the weaknesses in her testimony. *See Krist v. Foltz,* 804 F. 2d 944, 948-49 (6th Cir. 1986) ("The [Supreme] Court [has] emphasized that actual performance of an attorney at trial is the key to an ineffective assistance claim except in those rare cases where surrounding circumstances justify a presumption of ineffectiveness.").  "Although other attorneys might have reached a different conclusion about the value of cross-examining" MR in greater detail, counsel's strategic choice not to further cross-examine MR was "'within the wide range of reasonable professional assistance.'" *Moss v. Hofbauer,* 286 F. 3d 851, 864 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).  Finally, petitioner has failed to identify how additional impeachment of MR would have

affected the jury's decision. Defense counsel did not perform ineffectively by not more forcefully cross-examining the victim, particularly when the effect of further probing was entirely speculative on Petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012) ("Because counsel did raise the issue and pursued other lines of defense, we cannot find counsel's performance objectively unreasonable for declining to pursue the matter further, particularly when the effect of further probing is so speculative."). Petitioner is not entitled to relief on this basis.

## IV. CONCLUSION

Accordingly, for the reasons discussed above, the Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability.

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits,

34

the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. When a district court denies a petitioner's claims on procedural grounds, the petitioner must show, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *See Dell v. Straub,* 194 F. Supp. 2d at 659. Petitioner is denied leave to appeal *in forma pauperis* because the appeal would be frivolous. *Id.*

## V. ORDER

Accordingly, based on the foregoing, **IT IS HEREBY ORDERED** that the Amended Petition for Writ of Habeas Corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to appeal *in forma pauperis* is **DENIED**.

35

**IT IS SO ORDERED**.

/s/ Gershwin Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  September 27, 2022

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 27, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

36